# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ROBERT NORMAN WALLIN, SR.,

    Plaintiff(s),

CASE NUMBER: 90-73881

HONORABLE VICTORIA A. ROBERTS

v.

SILAS NORMAN, et. al.,

    Defendant(s).

_____/

## OPINION AND ORDER DENYING DEFENDANTS' MOTIONS FOR DISMISSAL AND SUMMARY JUDGMENT

### I. INTRODUCTION

This civil rights matter is before the Court on Defendants Motion for Dismissal and Summary Judgment. Defendants argue that this action should be dismissed because they are entitled to qualified immunity. In the alternative, Defendants argue that Plaintiff has failed to provide sufficient evidence to support his 8th Amendment or conspiracy claims, therefore they are entitled to summary judgment. Because Plaintiff has sufficiently alleged that Defendants violated his clearly established constitutional right to receive adequate medical treatment while incarcerated, Defendant's Motion to Dismiss in denied. Further, because the parties were under a stipulated order to stay discovery pending the Court's determination of Defendants' entitlement to qualified immunity, Defendants' Motion for Summary Judgment is denied as premature.

## II. RECENT PROCEDURAL HISTORY

On September 25, 2001, Defendants filed a Motion for Dismissed and/or Summary Judgment. A hearing on this motion was originally set for September 25, 2001. However, after discovering that a scheduling order had not been entered, the Court changed the hearing to a scheduling conference. Following the conference, the Court entered an order dismissing Defendants' motions without prejudice. The order stated that because discovery had not been completed, the motions were premature, but could be refiled at the close of discovery. Following the Court's order accepting, in part, the Magistrate Judge's report and recommendation, Plaintiff filed a Third Amended Complaint, adding Defendants Norman and Jacobson. On December 20, 2001, Defendants filed another Motion for Dismissal and/or Summary Judgment, raising for the first time the issue of qualified immunity. On February 21, 2002, the Court granted Plaintiff leave to file a Fourth Amended Complaint. The Court also entered a stipulated order to stay discovery. Pursuant to that order, the parties agreed to stay all discovery pending the Court's determination of the qualified immunity issue, or May 1, 2002, whichever date came first. On March 11, 2002, Defendants filed the present Motion for Dismissal and/or Summary Judgment. A hearing was conducted on April 24, 2002.

## III. ANALYSIS

### A. Qualified Immunity

Defendants argue that this action must be dismissed based on qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly

2

established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) (internal citations omitted). "The central purpose of affording public officials qualified immunity from suit is to protect them 'from undue interference with their duties and from potentially disabling threats of liability.' " *Elder v. Holloway,* 510 U.S. 510, 514 (1994) quoting *Harlow,* 457 U.S. at 806.

The threshold question for the Court in the qualified immunity analysis is whether, based on facts alleged and considering in "the light most favorable to the party asserting the injury," the officer's conduct violated a constitutional right. *Saucier v. Katz,* 533 US 194, 200 (2001). If the Court finds a constitutional violation, the next step is to determine whether the right was clearly established:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." . . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. . . If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.
>
> *Saucier,* 533 U.S. at 202 (internal citations omitted)

"Although it need not be the case that 'the very action in question has previously been held unlawful, . . . in the light of pre-existing law the unlawfulness must be apparent.' " *Dickerson v. McClellan,* 101 F.3d 1151, 1158 (6th Cir. 1996) (internal citation omitted). In the final step of the qualified immunity analysis, the Court must determine whether plaintiff has alleged sufficient facts supported by sufficient evidence "to indicate that

3

what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) citing *Dickerson*, 101 F.3d at 1157-58.

### B.  Motion to Dismiss

In considering a motion to dismiss pursuant to FRCP 12(b)(6), the Court "must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Financial Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). "Dismissal is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " Id., citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). When qualified immunity is asserted through a motion to dismiss, this Circuit applies a heightened pleading standard:

> . . . when a plaintiff pleads his claim in generalized "notice" form, and the defense of qualified immunity is asserted through a motion to dismiss, the plaintiff is required to respond to that defense. If his original complaint is deficient in that regard, he must amend his complaint to include the specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity.

*Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir. 1995)[1]

---

[1]Following the Supreme Court's decision in *Crawford-El v. Britton*, 523 U.S. 574 (1998) (rejecting D.C. Circuit's rule requiring a plaintiff alleging unconstitutional motivation to prove such intent by clear and convincing evidence), this heightened pleaded standard has been called into question based on its incoherence with FRCP 8. *Rippy v. Hattaway*, 270 F.3d 416, 425-28 (6th Cir. 2001) (J. Gilman, concurring). However, because Plaintiff's 8th Amendment claim does not require proof of unconstitutional motivation, as did the claim underlying *Crawford-El v. Britton*, and because *Veney v. Hogan*

4

First, the Court must determine whether a constitutional right was violated. Plaintiff alleges that the Defendants' failure to provide him with adequate medical treatment violated the 8th Amendment's proscription against cruel and unusual punishments.[2] This Circuit has formulated this type of claim into a more concrete standard:

> In the context of medical care for prisoners, the Supreme Court has long held that the standard for asserting an Eighth Amendment claim is deliberate indifference:
> an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

---

appears to be the prevailing rule in this Circuit, the Court will apply its holding to the present case.

[2]Defendants also argue that they are entitled to qualified immunity from Plaintiff's civil conspiracy claim under Section 1983. "There is, however, no cause of action for conspiracy per se under section 1983 . . . Plaintiff must prove the deprivation of a specifically-protected constitutional right to sustain the conspiracy claim." *Dean Tarry Corp. v. Friedlander*, 650 F.Supp. 1544, 1553 (S.D.N.Y. 1987). In the present case the alleged deprivation is Plaintiff's rights under the 8th Amendment. Therefore, to the extent that Defendants are protected by qualified immunity, it can be determined by analyzing their conduct in light of the 8th Amendment.

> *Estelle v. Gamble*, 429 U.S. 97, 105-06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Thus, properly stated, the right at issue is Wade's right not to have his serious medical needs treated with deliberate indifference.

*Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999).

This standard incorporates the requirements that must be met for a prison official to be held liable for violating the 8th Amendment: first, the violation must be sufficiently serious in that plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm"; second, plaintiff must show the prison official had a sufficiently culpable state of mind, which is one of deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Further, the Supreme Court has adopted the criminal law subjective recklessness standard as the test for deliberate indifference under the 8th Amendment. *Farmer*, 511 U.S. at 839-40. Thus, Defendants acted with deliberate indifference if they consciously disregarded a substantial risk of serious harm to Plaintiff. Id.

In the present case, Plaintiff alleges that prison officials delayed his access to medical treatment for a urinary tract infection, epididymitis, an enlarged testicle, and a leg injury, causing Plaintiff to suffer unnecessarily and resulting in residual injury. The denial of medical care, or the delayed access to such care when the need is apparent, can be sufficiently serious to constitute an 8th Amendment violation:

> Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate

6

> indifference to a prisoner's serious illness or injury states a cause of action under s 1983.

*Estelle v. Gamble*, 429 U.S. 97, 104-5 (1976).

Further, this Circuit has held that a prisoner has properly stated a cause of action under Section 1983 where he alleges that his reasonable requests for medical treatment were denied where the need for the treatment was obvious and he was " thereby exposed to undue suffering or the threat of tangible residual injury. *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976) (reversing district court's dismissal for failure to state a claim where plaintiff alleged jail officials denied medical treatment for his bleeding ulcer). Plaintiff has alleged that each Defendant was aware of one or more of his conditions and either failed to provide, or denied Plaintiff access to, prompt medical care, causing him undue suffering. At minimum, under *Westlake* these allegations are sufficiently serious to establish an 8th Amendment violation.

The next issue is whether each Defendant acted with deliberate indifference to Plaintiff's need for medical treatment.

   1.   **Dr. Randall A. Brown**

Dr. Brown acted with deliberate indifference if he consciously disregarded a substantial risk of serious harm to Plaintiff. See *Farmer,* 511 U.S. at 839-40. Plaintiff alleges that he was seen by Dr. Brown on or about November 10, 1987, because he was experiencing severe symptoms of a urinary tract infection, including difficulty and pain in urination and the passing of blood in his urine. Plaintiff alleges that despite these complaints, Dr. Brown did not provide any antibiotics for at least 10 days and did

not order a urine culture. As a result, he alleges that he was made to suffer the symptoms of a severe and painful infection without any relief. In addition, Plaintiff alleges that he currently suffers from severe pain during sexual intercourse and has been told that he has a low sperm count as a result of this denial of prompt medical treatment.

For the purposes of this Motion, Plaintiff's allegations are sufficient to establish that Dr. Brown acted with deliberate indifference. Plaintiff has alleged that Dr. Brown was aware of the severe pain and symptoms he was suffering and failed to take prompt action to alleviate his pain, treat his condition, or take steps to obtain a proper diagnosis. As the court held in *Westlake,* "a prisoner who is needlessly allowed to suffer pain when relief is readily available does have a cause of action against those whose deliberate indifference is the cause of his suffering." *Westlake,* 537 F.2d 857, 860 (6th Cir. 1976).

### 2. Dr. Timothy Barth

Plaintiff alleges that Dr. Barth was the physician who primarily treated him during the period at issue in this action. He alleges that on or about November 11, 1987, he sent correspondence to Dr. Barth regarding this bloody urine. On or about November 16, 1987, Dr. Barth allegedly saw Plaintiff for the treatment of a condition diagnosed as epididymitis and an enlarged testicle,[3] and provided no immediate medication or treatment in response to Plaintiff's complaints about his condition. Plaintiff alleges that

---

[3]It is not clear from the Fourth Amended Complaint, ¶ 17, if these conditions were diagnosed by Dr. Barth or another physician at a later date.

the only 'treatment' Dr. Barth offered was to suggest that he masturbate three times a week. As a result, Plaintiff alleges that he was made to suffer for approximately 10 days with the symptoms of this severe and painful infection. Plaintiff also alleges that he has the same residual injuries that he suffered as a result of Dr. Brown's failure to provide prompt medical treatment. In addition, Plaintiff alleges that on April 14, 1987, he sustained a leg and ankle injury after falling through prison bleachers. Plaintiff alleges that Dr. Barth consciously chose not to hospitalize him, despite the continuing severity of this injury, until 10 months later when his parole was imminent. As a result, Plaintiff alleges he unnecessarily suffered severe pain and discomfort. Finally, Plaintiff alleges that during the course of his incarceration Dr. Barth failed to treat Plaintiff's other medical conditions, including headaches and neurological problems.

As with Dr. Brown, for the purposes of this Motion Plaintiff's allegations are sufficient to establish that Dr. Barth acted with deliberate indifference. Plaintiff has alleged that Dr. Barth, as Plaintiff's primary physician while incarcerated, was aware of medical conditions that caused him severe pain, and failed to provide prompt medical treatment to relieve his pain or treat his symptoms. Further, Plaintiff has alleged that Dr. Barth consciously disregarded these serious risks to his medical condition. These allegations are sufficient under the standard in *Westlake*.

### 3. David Landenburger

Plaintiff alleges that following his injury on the prison bleachers on or about April 14, 1987, Landenburger, a corrections officer, refused to allow him to receive medical treatment. He alleges that this constituted a denial of treatment because prisoner are

only allowed access to treatment if given permission by a corrections officer. In addition, Plaintiff alleges that Landenburger failed to report the injury. It is established that the requisite deliberate indifference can be manifested when a prison guard intentionally denies or delays access to medical treatment. See *Estelle,* 429 U.S. at 104-5. Plaintiff's allegations are therefore sufficient to establish that Landenburger acted with deliberate indifference.

### 4. Sergeant James Borton

Plaintiff alleges that Sergeant Borton refused to provide him with a permission slip so that he could be seen for examination and treatment after he injured his leg. For the same reasons as Landenburger, the allegations are sufficient to establish that Sergeant Borton acted with deliberate indifference.

### 5. Leonard Pawloski

Plaintiff alleges that on or about April 16, 1987, two days after receiving his leg injury on the prison bleachers, Pawloski, a member of the emergency room staff, refused to provide medical treatment for Plaintiff's injuries. Plaintiff further alleges that Pawloski again refused to provide treatment after Plaintiff's leg burst open from an infection resulting from the injury. These allegations are sufficient to establish that Pawloski consciously disregarded a risk of serious harm to Plaintiff, and, therefore, acted with deliberate indifference.

### 6. Dr. Silas Norman

Plaintiff alleges that, in his capacity as medical director, Dr. Norman had knowledge of Plaintiff's medical needs and participated in meetings and administrative

hearings involving his lack of medical care. Plaintiff further alleges that Dr. Norman ignored those needs, attributing Plaintiff's complaints to his unstable mental status. Plaintiff also alleges that Dr. Norman participated in a conspiracy to deprive him of medical care. The allegations against Dr. Norman, therefore, are less direct. Plaintiff does not allege that Dr. Norman ever examined or treated him. In addition, Plaintiff does not allege that he ever informed Dr. Norman of his medical condition or the pain he experienced. However, if Plaintiff's allegations are assumed to be true, the fact that Dr. Norman had actual knowledge of his medical needs and participated in meetings involving his lack of care are sufficient to establish that he consciously disregarded a risk of serious harm to Plaintiff. Further, if Dr. Norman, in his capacity as the medical director at the prison medical facility, played a direct role in the denial of Plaintiff's medical care with such knowledge, there is little doubt that this would constitute deliberate indifference to Plaintiff's medical needs. Thus, Plaintiff's allegations are sufficient.

### 7. Eric Jacobson

Plaintiff's allegations against Jacobson are nearly identical to the allegations made against Dr. Norman. Based on the same reasoning applied above, the allegations against Jacobson are sufficient.

Plaintiff's allegations, accepted as true for the purposes of this motion to dismiss, sufficiently establish that his rights under the 8th Amendment have been violated. Prisoners have a right to receive prompt, adequate medical care under the 8th Amendment. Plaintiff has sufficiently alleged that he was denied prompt medical care. In addition, he has sufficiently alleged that Defendants acted with deliberate

indifference in denying him such care.

The next step in the qualified immunity analysis is to determine whether that right was clearly established. Because it is well-established that a prisoner has a right to receive adequate medical treatment, the Court is satisfied that the alleged unlawfulness of each Defendant's alleged conduct would be apparent to any reasonable official. The allegations Plaintiff has made against each Defendant relate to each's role in denying or delaying Plaintiff's access to medical treatment. Based on the clear rules established by cases such as *Estelle* and *Westlake*, any reasonable officer would be on notice that the conduct alleged by Plaintiff was unlawful. See *Saucier v. Katz*, 533 US 194, 2002 (2001). Defendants are not entitled to qualified immunity on this Motion to Dismiss.

### C. Motion for Summary Judgment

Defendants also argue they are entitled to summary judgment because Plaintiff has failed to provide sufficient evidence to support his 8th Amendment and conspiracy claims. The Court has already ruled that it will not accept Defendants' motion for summary judgment until the close of discovery. Defendants' motion, is therefore, denied.

### IV. CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss on the grounds of qualified immunity **[Doc. 127-1]** is denied. Defendants' Motion for Summary Judgment

12

[Doc. 127-2] is denied, without prejudice. Defendants are precluded from filing additional summary judgment motions until the close of discovery.

**IT IS SO ORDERED.**

/s/ Victoria A. Roberts
VICTORIA A. ROBERTS
UNITED STATES DISTRICT JUDGE

Dated: APR 30 2002